**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GLENCORE FINANCE (BERMUDA) LTD.,
Victoria Place
5th Floor
31 Victoria Street
Hamilton, HM 10
Bermuda

              Petitioner,

     v.

THE PLURINATIONAL STATE OF BOLIVIA,
Ministerio de Relaciones Exteriores
Dirección General de Asuntos Jurídicos
Plaza Murillo: Calle Junín, Esquina Ingavi
La Paz, Bolivia

              Respondent.

Civil Action No. _____

**PETITION TO RECOGNIZE AND**
**ENFORCE A FOREIGN ARBITRAL AWARD**

Petitioner Glencore Finance (Bermuda) Ltd. ("Glencore" or "Petitioner") by and through

its undersigned attorneys, states as follows:

**NATURE OF THE ACTION**

1.     This is an action to recognize and enforce an arbitration award under Chapter 2 of

the Federal Arbitration Act, 9 U.S.C. §§ 201 *et seq.* (the "FAA"), and the Convention on the

Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517

(the "New York Convention" or the "Convention").  Petitioner seeks the recognition and

enforcement of an arbitration award (the "Award") rendered in its favor against the Plurinational

State of Bolivia ("Bolivia" or "Respondent").  The Award was rendered by the arbitral tribunal

(the "Tribunal") in *Glencore Finance (Bermuda) Ltd v. The Plurinational State of Bolivia*, PCA Case No. 2016-39 (the "Arbitration").[1]  *See* Walsh Decl. Ex. A (Award).

2.      The Arbitration arose out of Glencore's investment in four mining assets in Bolivia: (1) the Vinto Tin Smelter; (2) the Antimony Smelter; (3) tin concentrates stored at the Antimony Smelter (the "Tin Stock"); and (4) the Colquiri Mine.  Bolivia nationalized the Vinto Tin Smelter, the Antimony Smelter (and the Tin Stock stored therein), and the Colquiri Mine under three Supreme Decrees issued on February 7, 2007, May 1, 2010, and June 20, 2012.  *See* Walsh Decl. Ex. A (Award) ¶¶ 78–81, 104–26.  Bolivia never paid Glencore any compensation for those nationalizations.  *See* Walsh Decl. Ex. A (Award) ¶¶ 214, 223–24, 234.

3.      Glencore commenced arbitration against Bolivia on July 19, 2016 claiming that, among other things, Bolivia's nationalization of Glencore's assets violated the Agreement between the Government of the United Kingdom of Great Britain and Northern Ireland and the Government of the Republic of Bolivia for the Promotion and Protection of Investments, May 24, 1988, 1640 U.N.T.S. 3, extended to the British overseas territory of Bermuda on December 9, 1992 (the "Treaty").  *See* Walsh Decl. ¶¶ 7–8; Walsh Decl. Ex. B (Treaty).

4.      Glencore and Bolivia participated fully in the ensuing Arbitration, which lasted for seven years.  The Tribunal issued its Award on September 8, 2023.  The Award ordered Bolivia to pay Glencore more than $253 million in compensation for Bolivia's breaches of the Treaty.  *See* Walsh Decl. Ex. A (Award) ¶ 564.  The Tribunal also ordered Bolivia to pay post-award interest from the date of issuance of the Award, September 8, 2023, until the date of payment.  *See id.*

---

[1]   References to the "Walsh Declaration" or "Walsh Decl." are to the accompanying Declaration of Thomas W. Walsh, dated October 11, 2023.

5.     Glencore requested that Bolivia comply with the Award and pay the compensation awarded, but Bolivia has not paid any of the amounts due under the Award. *See* Walsh Decl. ¶¶ 16–17. Pursuant to the FAA and the New York Convention, Glencore respectfully requests that this Court recognize and enforce the Award and enter judgment in Glencore's favor in the full amount of the Award including interest as provided therein, and with further interest to accrue pursuant to the Award until the date of payment in full, in addition to the costs of this proceeding.

## PARTIES

6.     Petitioner Glencore Finance (Bermuda) Ltd. is a company organized and existing under the laws in force in Bermuda, with its principal place of business at Victoria Place, 5th Floor, 31 Victoria Street, Hamilton, HM 10, Bermuda. Petitioner is a wholly owned subsidiary of Glencore Plc, which is organized in Jersey, Channel Islands, and headquartered in Baar, Switzerland.

7.     Respondent the Plurinational State of Bolivia is a foreign state within the meaning of the Foreign Sovereign Immunities Act (the "FSIA"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1602–1611.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this petition to recognize and enforce a foreign arbitral award against a foreign sovereign under 28 U.S.C. § 1330(a), 28 U.S.C. § 1331, and 9 U.S.C. § 203.

9.     Bolivia is not entitled to sovereign immunity in this action for two reasons. First, this is an action to recognize and enforce an arbitral award governed by the New York Convention, which is a treaty calling for the recognition and enforcement of arbitral awards to which the United States is a party. This action therefore falls within the FSIA's exception for

arbitral enforcement actions.  *See* 28 U.S.C. § 1605(a)(6); *Process & Indus. Devs. Ltd. v. Fed. Republic of Nig.*, 27 F.4th 771, 776 (D.C. Cir. 2022); *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 101–02 (D.C. Cir. 2015).

10.     Second, Bolivia has impliedly waived its immunity by signing the New York Convention.  *See* 28 U.S.C. § 1605(a)(1); *Process & Indus. Devs. Ltd. v. Fed. Republic of Nig.*, 506 F. Supp. 3d 1, 6–11 (D.D.C. 2020), *aff'd on other grounds*, 27 F.4th 771 (D.C. Cir. 2022); *Tatneft v. Ukraine*, 771 F. App'x 9, 9–10 (D.C. Cir. 2019) (per curiam).  This action therefore also falls under the waiver exception in Section 1605(a)(1) of the FSIA.

11.     This Court has personal jurisdiction over Bolivia pursuant to 28 U.S.C. § 1330(b) because (1) Bolivia is a foreign state that is not entitled to immunity in this action, and (2) Glencore intends to serve process on Bolivia in accordance with the requirements of 28 U.S.C. § 1608(a).

12.     Venue is proper in this judicial district because this is a civil action against a foreign state which may be brought in the U.S. District Court for the District of Columbia under 28 U.S.C. § 1391(f)(4) and 9 U.S.C. § 204.

## THE DISPUTE AND THE AWARD

### A.     The Dispute

13.     The Award arises from Bolivia's nationalization of certain investments made by Glencore in Bolivia.  Specifically, the dispute concerned Glencore's investments in:

   a.  The Colquiri Mine, which Glencore owned through its 100% shareholding in the Bolivian company Compañía Minera Colquiri S.A. ("Colquiri");

   b.  the Vinto Tin Smelter, which Glencore owned through its 100% shareholding in the Bolivian Company Metalúrgico Vinto S.A. ("Vinto");

c.   the Antimony Smelter, which Glencore owned through its 100% shareholding in Colquiri, and;

d.   the Tin Stock, which Glencore owned through its 100% shareholding in Colquiri. *See* Walsh Decl. Ex. A (Award) ¶¶ 78–83, 89–90, 100.

14.    Beginning in 2007, Bolivia nationalized Glencore's investments.  On February 9, 2007, Bolivia nationalized Vinto through Supreme Decree No. 29,026.  *See* Walsh Decl. Ex. A (Award) ¶ 104.  Bolivia did not pay any compensation for the nationalization of Vinto.  *See id.* ¶ 214.  On December 11, 2007, Glencore notified Bolivia of the existence of a dispute under the Treaty regarding the Vinto Tin Smelter.  *See* Walsh Decl. Ex. A (Award) ¶ 105; Walsh Decl. Ex. D (Notice of Arbitration) ¶ 26.

15.    On May 1, 2010, Bolivia nationalized the Antimony Smelter by Supreme Decree No. 499.  *See* Walsh Decl. Ex. A (Award) ¶ 108.  At the time of nationalization, the Antimony Smelter was storing the Tin Stock.  *See id.* ¶ 110.  Bolivia did not pay any compensation for either the nationalization of the Antimony Smelter or the Tin Stock.  *See id.* ¶¶ 223–24.  On May 14, 2010, Glencore notified Bolivia of the existence of a dispute under the Treaty regarding these two assets.  *See id.* ¶ 110.

16.    On June 20, 2012, Bolivia issued Supreme Decree No. 1,264 nationalizing the Colquiri Mine.  *See id.* ¶ 126.  Bolivia did not pay any compensation for the nationalization of the Colquiri Mine.  *See id.* ¶ 234.  On July 27, 2012, Glencore notified Bolivia of the existence of a dispute in relation to the Colquiri Mine.  *See id.* ¶ 36.

**B.    Agreement to Arbitrate**

17.    The arbitration agreement between Petitioner and Respondent is contained in Article 8 of the Treaty.

18.      Article 8(1) of the Treaty provides that "[d]isputes between a national or company of one Contracting Party and the other Contracting Party concerning an obligation of the latter under this Agreement in relation to an investment of the former which have not been legally and amicably settled shall after a period of six months from written notification of a claim be submitted to international arbitration if either party to the dispute so wishes."  Walsh Decl. Ex. B (Treaty), art. 8.  Article 11 of the Treaty allows the United Kingdom to extend the territorial application of the Treaty to its overseas territories through an Exchange of Notes.  *Id.*, art. 11.  The United Kingdom extended the application of the Treaty to the overseas territory of Bermuda through an Exchange of Notes with Bolivia from December 3 to 9, 1992.  *See* Walsh Decl. Ex. A (Award) ¶ 70; Walsh Decl. Ex. B. (Treaty).  As a Bermuda-incorporated company, Petitioner qualifies as a company of one of the Contracting Parties to the Treaty.  *See* Walsh Decl. Ex. A (Award) ¶ 1.

19.      Article 8(2) of the Treaty provides that the United Nations Commission on International Trade Law Arbitration Rules (the "UNCITRAL Rules") shall be the default procedure for arbitrations under the Treaty if parties do not agree on an alternative procedure within six months of notification of the claim.  Walsh Decl. Ex. B. (Treaty), art. 8.  Glencore and Bolivia did not agree on an alternative procedure.  *See* Walsh Decl. Ex. A (Award) ¶¶ 5–7, 13.

C.      **The Arbitration**

20.      On July 19, 2016, Glencore filed a Notice of Arbitration against Bolivia pursuant to Article 8 of the Treaty and the UNCITRAL Rules as revised in 2010.  *See id*. ¶ 5; Walsh Decl. Ex. D (Notice of Arbitration) ¶ 1.  Glencore alleged that Bolivia had, among other things, expropriated Glencore's investments in violation of the Treaty by depriving Glencore of its title, ownership, and control over the Vinto Tin Smelter, the Antimony Smelter, the Tin Stock, and the

Colquiri Mine without due process of law or just, effective, and prompt compensation.  *See* Walsh Decl. Ex. A (Award) ¶ 197.

21.     On August 18, 2016, Bolivia submitted its Response to the Notice of Arbitration. *See* Walsh Decl. ¶ 8; Walsh Decl. Ex. A (Award) ¶ 7.

22.     The Tribunal was constituted on February 28, 2017 and was composed of three arbitrators.  *See* Walsh Decl. ¶ 9; Walsh Decl. Ex. A (Award) ¶¶ 8–11.[2]

23.     The Arbitration was seated in Paris, France.  *See* Walsh Decl. Ex. A (Award) ¶ 15.

24.     The parties engaged in a first round of briefing from August to December 2017. *See id.* ¶¶ 17–20.  In January 2018, the Tribunal divided the Arbitration into two phases.  *See id.* ¶¶ 21–22.  The first phase of the Arbitration considered Bolivia's objections to the Tribunal's jurisdiction, and the merits of Glencore's claims.  The parties submitted additional briefing regarding these issues from June 2018 to January 2019.  *See id.* ¶¶ 25–28.  The parties and the Tribunal held a hearing on jurisdiction and the merits from May 20 to 23, 2019.  *See* Walsh Decl. ¶ 11; Walsh Decl. Ex. A (Award) ¶¶ 32–34.

25.     The second phase of the Arbitration addressed the quantification of damages.  The parties submitted additional briefing on damages between July 2019 and June 2020.  *See* Walsh Decl. ¶ 12; Walsh Decl. Ex. A (Award) ¶¶ 37–56.  The parties and the Tribunal held a hearing on damages from March 28 to April 1, 2021.  *See* Walsh Decl. ¶ 12; Walsh Decl. Ex. A (Award) ¶¶ 63–65.

---

[2]     The Tribunal was composed of Prof. John Y. Gotanda (appointed by Glencore), Prof. Philippe Sands (appointed by Bolivia), and Prof. Ricardo Ramírez Hernández (appointed as the presiding arbitrator by the PCA).  *See* Walsh Decl. ¶ 9.

26. Finally, the parties submitted post-hearing submissions and statements of costs between November and December 2021. *See* Walsh Decl. Ex. A (Award) ¶¶ 67–69.

27. In total, the parties filed fifteen written submissions, totaling 1714 pages, eighteen witness statements, and twelve expert reports, and participated in nine days of hearings. *Id.* ¶¶ 5–69.

**D.    The Award**

28. The Tribunal rendered its Award on September 8, 2023.  Walsh Decl. Ex. A (Award).  The Tribunal unanimously dismissed Bolivia's objections to the Tribunal's jurisdiction and determined that, among other things, Bolivia had breached Article 5 of the Treaty because Bolivia's nationalizations of the Tin Smelter, the Antimony Smelter, the Tin Stock, and the Colquiri Mine constituted expropriations without a public purpose or social benefit, and without just and effective compensation. *See id.* ¶¶ 197–236.

29. As to damages, the Tribunal determined that Bolivia was liable to pay Glencore compensation in the amount of $253,591,796, net of taxes, for Bolivia's breaches of the Treaty. *See id.* ¶ 564(f).

30. Of this total amount:

   a. $235,800,000 was awarded for the Colquiri Mine;

   b. $15,970,000 was awarded for the Vinto Tin Smelter;

   c. $694,960 was awarded for the Antimony Smelter; and

   d. $1,126,836 was awarded for the Tin Stock. *Id.*

31. The Tribunal also ordered Bolivia to pay Glencore post-award simple interest from September 8, 2023 until the date of payment at a rate of 6.4% for the Colquiri Mine compensation, 8.6% for the Vinto Tin Smelter compensation, and 6.1% for the Antimony Smelter and the Tin Stock compensation. *Id.* ¶¶ 519, 564(g).

32.     The Award is final and binding on the parties.  *See* Walsh Decl. ¶ 16; Walsh Decl. Ex. B (UNCITRAL Rules), art. 34(2).

33.     On September 15, 2023, Glencore requested that Bolivia comply with the Award and pay the compensation awarded.  *See* Walsh Decl. ¶ 16.  Bolivia has not paid Glencore any portion of the Award despite Glencore's request.  *See id*. ¶ 17.

34.     On October 6, 2023, Bolivia filed a request for correction of the Award under Article 38 of the UNCITRAL Rules, and Glencore filed a separate request for interpretation of aspects of the Award under Article 37 of the UNCITRAL Rules.  *See* Walsh Decl. ¶ 18.  As of October 11, 2023, the Tribunal has not ruled on either Bolivia's or Glencore's request.  *See id.* Any correction or interpretation issued by the Tribunal will form part of the Award.  *See* Walsh Decl. Ex. B (UNCITRAL Rules), arts. 37(2), 38(3).

35.     The Petitioner reserves the right to amend this Petition in the event of any clarifications or corrections made to the Award pursuant to Articles 37 or 38 of the UNCITRAL Rules.

## LEGAL BASIS FOR RELIEF

### A.     The Award Is Within the Scope of the New York Convention.

36.     The Award should be recognized and enforced pursuant to the New York Convention.  The Convention is an international treaty among more than 150 countries for "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought."   New York Convention, art. I(1).  The Convention provides that "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles."  *Id*., art. III.

37.     The Award was rendered in France, which is a party to the New York Convention.  *See New York Arbitration Convention: Contracting States*, http://www.newyorkconvention.org/countries.  The United States also is a party to the Convention and has implemented it through Chapter 2 of the FAA.  The FAA provides that "[t]he Convention . . . shall be enforced in United States courts in accordance with this chapter." 9 U.S.C. § 201.

38.     Under the FAA, "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the [New York] Convention" unless it arises out of a "relationship which is entirely between citizens of the United States."  9 U.S.C. § 202.

39.     Each of those requirements is met here.  The Award arises out of a legal relationship that is "commercial" within the meaning of 9 U.S.C. § 202, as it involves Glencore's investments in Bolivia's mining sector, and neither Glencore nor Bolivia is a citizen of the United States.  The Award therefore falls under the New York Convention.  *Cf. Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, 300 F. Supp. 3d 137, 142, 151 (D.D.C. 2018) (enforcing arbitral award under the FAA and New York Convention where award pertained to investment protected by bilateral investment treaty); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,* 244 F. Supp. 3d 100, 105, 123 (D.D.C. 2017) (same), *aff'd*, 760 F. App'x 1 (D.C. Cir. 2019); *Gold Reserve Inc. v. Bolivarian Republic of Venezuela,* 146 F. Supp. 3d 112, 117, 137 (D.D.C. 2015) (same); *Chevron Corp. v. Republic of Ecuador,* 949 F. Supp. 2d 57, 61, 73 (D.D.C. 2013) (same), *aff'd,* 795 F.3d 200 (D.C. Cir. 2015).

40.     The New York Convention requires that a party seeking to recognize and enforce a foreign arbitral award submit (*i*) a duly authenticated original or duly certified copy of the award and (*ii*) the arbitration agreement.   New York Convention, art. IV(1).   Glencore has submitted a copy of the authenticated original Award as Exhibit A to the Walsh Declaration.  *See* Walsh Decl. Ex. A (Award); Walsh Decl. ¶ 3.  The agreement to arbitrate consists of Bolivia's offer to arbitrate, which is found at Article 8 of the Treaty, *see* Walsh Decl. Ex. B (Treaty), art. 8; and Glencore's acceptance of that offer, manifested in its Notice of Arbitration, *see* Walsh Decl. Ex. A (Award) ¶ 5; Walsh Decl. Ex. D (Notice of Arbitration) ¶ 1.  The Award thus meets all of the New York Convention's requirements for recognition and enforcement.

**B.      There Is No Basis Under the New York Convention to Deny Recognition and Enforcement.**

41.     The FAA provides that that a U.S. court "*shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention."  9 U.S.C. § 207 (emphasis added).  Recognition and enforcement of an arbitral award is therefore mandatory unless one of the narrow and exclusive grounds for non-enforcement in Article V of the Convention applies.  *See Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) ("the FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards"); *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007) (a court "may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention" (citation omitted)).

42.     Proceedings on the recognition and enforcement of arbitral awards are "generally summary in nature" because of the limited grounds for non-enforcement under the New York Convention.  *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011); *see also TermoRio*, 487 F.3d at 940 ("The hearing on [a petition for

enforcement of an arbitral award] will take the form of a summary procedure." (citation omitted)).  "[T]he showing required to avoid summary confirmation is high."  *Int'l Trading.*, 763 F. Supp. 2d at 20 (quoting *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987)).  Further, the party opposing enforcement of the award "bears the heavy burden of establishing that one of the grounds for denying confirmation in Article V applies."  *Gold Reserve*, 146 F. Supp. 3d at 120.  None of the grounds for non-enforcement under the New York Convention apply here.

43.    Because the Award "fall[s] under the [New York] Convention," was made within the last three years, and is not subject to any of the grounds for denial of recognition and enforcement in Article V of the Convention, this Court must recognize and enforce the Award in its entirety against Bolivia.  *See* 9 U.S.C. § 207.

## CAUSE OF ACTION AND REQUEST FOR RELIEF

44.    Petitioner repeats and re-alleges the allegations in paragraphs 1 through 43 as if set forth fully herein.

45.    The Award falls under the New York Convention.

46.    The Award is the result of an arbitration seated in Paris, France, between Glencore and Bolivia, with both parties consenting to the dispute resolution mechanism set forth in the Treaty.

47.    The Award was made within the past three years, on September 8, 2023.

48.    The Award is final and binding on Glencore and Bolivia and has not been set aside by the French courts.  *See* Walsh Decl. ¶ 9 (noting that the Arbitration was seated in Paris, France); Walsh Decl. Ex. C (UNCITRAL Rules), art. 34(2) ("All awards . . . shall be final and binding on the parties.").

49.    As required by Article IV of the New York Convention, the Petition attaches (*i*) a copy of the authenticated original Award, Walsh Decl. Ex. A (Award), and (*ii*) the arbitration

agreement in the Treaty, Walsh Decl. B (Treaty), art. 8, and Glencore's Notice of Arbitration, *see* Walsh Decl. Ex. D (Notice of Arbitration).

50.    Therefore, under the FAA, the Court shall recognize and enforce the Award unless it finds that one of the grounds for refusal or deferral of recognition or enforcement of the Award specified in the New York Convention applies.  *See* 9 U.S.C. § 207.  None of the New York Convention grounds for denying or deferring recognition and enforcement of an award apply in this case.

51.    For the foregoing reasons, Glencore is entitled to an order (*i*) recognizing and enforcing the Award pursuant to the New York Convention, and (*ii*) entering judgment in Glencore's favor in the amount specified in the Award plus interest from the date of the Award.

WHEREFORE, Petitioner respectfully requests that the Court enter an order:

(a)    recognizing and enforcing the Award against Bolivia;

(b)    entering judgment against Bolivia and in favor of Glencore in the amount of the full value of the Award, $253,591,796, which consists of:

(i)  $235,800,000 for the Colquiri Mine;

(ii) $15,970,000 for the Vinto Tin Smelter;

(iii) $694,960 for the Antimony Smelter; and

(iv) $1,126,836 for the Tin Stock.

(c)    awarding post-award simple interest from September 8, 2023 until the date of judgment at a rate of:

(i)  6.4% for the Colquiri Mine compensation;

(ii) 8.6% for the Vinto Tin Smelter compensation; and

(iii) 6.1% for the Antimony Smelter and the Tin Stock compensation.

(d)     awarding post-judgment interest at the rate provided in 28 U.S.C. § 1961(a), and compounded annually, from the date of entry of judgment to the date the judgment is satisfied in full;

(e)     awarding Glencore its fees and costs for this proceeding; and

(f)     granting such other and further relief as the Court deems just and proper.

A proposed order is attached.

Respectfully submitted,

Dated: New York, New York
       October 11, 2023

By:     /s/ Elliot Friedman
        Elliot Friedman, D.C. Bar No. NY0106
        elliot.friedman@freshfields.com
        Thomas W. Walsh, *pro hac vice* forthcoming
        thomas.walsh@freshfields.com
        Ruth Montiel, *pro hac vice* forthcoming
        ruth.montiel@freshfields.com
        FRESHFIELDS BRUCKHAUS DERINGER US LLP
        601 Lexington Avenue, 31st Floor
        New York, New York 10022
        Telephone: (212) 277-4000
        Facsimile: (212) 277-4001

        *Attorneys for Petitioner*