# Exhibit B

BOLIVIA

Treaty Series No. 34 (1990)

# Agreement

between the Government of the
United Kingdom of Great Britain and Northern Ireland
and the Government of the Republic of Bolivia
for the Promotion and Protection of Investments

La Paz, 24 May 1988

[The Agreement entered into force on 16 February 1990]

*Presented to Parliament
by the Secretary of State for Foreign and Commonwealth Affairs
by Command of Her Majesty
June 1990*

LONDON : HMSO
£2·55

Cm 1071

# AGREEMENT
# BETWEEN THE GOVERNMENT OF THE
# UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND
# AND THE GOVERNMENT OF THE REPUBLIC OF BOLIVIA
# FOR THE PROMOTION AND PROTECTION OF INVESTMENTS

The Government of the United Kingdom of Great Britain and Northern Ireland and the Government of the Republic of Bolivia;

Desiring to create favourable conditions for greater investment by nationals and companies of one State in the territory of the other State;

Recognising that the encouragement and reciprocal protection under international agreement of such investments will be conducive to the stimulation of individual business initiative and will increase prosperity in both States;

Have agreed as follows:

## ARTICLE 1
### Definitions

For the purposes of this Agreement;
(a) "investment" means every kind of asset which is capable of producing returns and in particular, though not exclusively, includes:
   (i) movable and immovable property and any other property rights such as mortgages, liens or pledges;
   (ii) shares in and stock and debentures of a company and any other form of participation in a company;
   (iii) claims to money or to any performance under contract having a financial value;
   (iv) intellectual property rights and goodwill;
   (v) any business concessions granted by the Contracting Parties in accordance with their respective laws, including concessions to search for, cultivate, extract or exploit natural resources.

A change in the form in which assets are invested does not affect their characters as investments. Investments made before the date of entry into force as well as those made after entry into force shall benefit from the provisions of this Agreement;

(b) "returns" means the amounts yielded by an investment and in particular, though not exclusively, includes profit, interest, capital gains, dividends, royalties and fees;

(c) "nationals" means:
   (i) in respect of the United Kingdom: physical persons deriving their status as United Kingdom nationals from the law in force in the United Kingdom;
   (ii) in respect of the Republic of Bolivia: Bolivians who have such status under their political constitution and other provisions in force on the matter in their territory.

(d) "companies" means:
   (i) in respect of the United Kingdom: corporations, firms and associations incorporated or constituted under the law in force in any part of the United Kingdom or in any territory to which this Agreement is extended in accordance with the provisions of Article 11;
   (ii) in respect of the Republic of Bolivia: corporations, firms and associations incorporated or constituted under the law in force in any part of the Republic of Bolivia.

(e) "territory" means:
   (i) in respect of the United Kingdom: Great Britain and Northern Ireland and any territory to which this Agreement is extended in accordance with the provisions of Article 11;
   (ii) in respect of the Republic of Bolivia: all the territory which is under the sovereignty and jurisdiction of the Bolivian State.

2

ARTICLE 2

**Promotion and Protection of Investment**

(1) Each Contracting Party shall encourage and create favourable conditions for nationals or companies of the other Contracting Party to invest capital in its territory, and, subject to its right to exercise powers conferred by its laws, shall admit such capital.

(2) Investments of nationals or companies of each Contracting Party shall at all times be accorded fair and equitable treatment and shall enjoy full protection and security in the territory of the other Contracting Party. Neither Contracting Party shall, in any way, impair by unreasonable or discriminatory measures the management, maintenance, use, enjoyment or disposal of investments in its territory of nationals or companies of the other Contracting Party. Each Contracting Party shall observe any obligation it may have entered into with regard to investments of nationals or companies of the other Contracting Party.

ARTICLE 3

**National Treatment and Most-favoured-nation Provisions**

(1) Neither Contracting Party shall in its territory subject investments or returns of nationals or companies of the other Contracting Party to treatment less favourable than that which it accords to investments or returns of its own nationals or companies or to investments or returns of nationals or companies of any third State.

(2) Neither Contracting Party shall in its territory subject nationals or companies of the other Contracting Party, as regards their management, use, enjoyment or disposal of their investments, to treatment less favourable than that which it accords to its own nationals or companies or to nationals or companies of any third State.

ARTICLE 4

**Compensation for Losses**

(1) Nationals or companies of one Contracting Party whose investments in the territory of the other Contracting Party suffer losses owing to war or other armed conflict, revolution, a state of national emergency, revolt, insurrection or riot in the territory of the latter Contracting Party shall be accorded by the latter Contracting Party treatment, as regards restitution, indemnification, compensation or other settlement, no less favourable than that which the latter Contracting Party accords to its own nationals or companies or to nationals or companies of any third State.

(2) Without prejudice to paragraph (1) of this Article, nationals and companies of one Contracting Party who in any of the situations referred to in that paragraph suffer losses in the territory of the other Contracting Party resulting from:

(a) requisitioning of their property by its forces or national government authorities, or

(b) destruction of their property by its forces or national government authorities, which was not caused in combat action or was not required by the necessity of the situation,

shall be accorded restitution or adequate compensation.

Resulting payments shall be freely transferable.

ARTICLE 5

**Expropriation**

(1) Investments of nationals or companies of either Contracting Party shall not be nationalised, expropriated or subjected to measures having effect equivalent to nationalisation or expropriation (hereinafter referred to as "expropriation") in the territory of the other Contracting Party except for a public purpose and for a social benefit related to the internal needs of that Party and against just and effective compensation. Such compensation shall amount to the market value of the investment expropriated immediately before the expropriation or before the impending expropriation became public knowledge, whichever is the earlier, shall include interest at a normal commercial

or legal rate, whichever is applicable in the territory of the expropriating Contracting Party, until the date of payment, shall be made without delay, be effectively realizable and be freely transferable. The national or company affected shall have the right to establish promptly by due process of law in the territory of the Contracting Party making the expropriation the legality of the expropriation and the amount of the compensation in accordance with the principle set out in this paragraph.

(2) Where a Contracting Party expropriates the assets of a company which is incorporated or constituted under the law in force in any part of its own territory, and in which nationals or companies of the other Contracting Party own shares, it shall ensure that the provisions of paragraph (1) of this Article are applied to the extent necessary to guarantee prompt, adequate and effective compensation in respect of their investment to such nationals or companies of the other Contracting Party who are owners of those shares.

## ARTICLE 6

### Repatriation of Investment and Returns

(1) Each Contracting Party shall in respect of investments guarantee to nationals or companies of the other Contracting Party the unrestricted transfer to the country where they reside of their investments and returns, subject to the right of each Contracting Party in exceptional balance of payments difficulties and for a limited period to exercise equitably and in good faith powers conferred by its laws. Such powers shall not however be used to impede the transfer of profit, interest, dividends, royalties or fees; as regards investments and any other form of return, transfer of a minimum of 20 per cent a year is guaranteed.

(2) Transfers of currency shall be effected without delay in the convertible currency in which the capital was originally invested or in any other convertible currency agreed by the investor and the Contracting Party concerned. Unless otherwise agreed by the investor transfers shall be made at the rate of exchange applicable on the date of transfer pursuant to the exchange regulations in force.

## ARTICLE 7

### Exceptions

The provisions in this Agreement relative to the grant of treatment not less favourable than that accorded to the nationals or companies of either Contracting Party or of any third State shall not be construed so as to oblige one Contracting Party to extend to the nationals or companies of the other the benefit of any treatment, preference or privilege resulting from:

(a) any existing or future customs union or similar international agreement to which either of the Contracting Parties is or may become a party, or

(b) any international agreement or arrangement relating wholly or mainly to taxation or any domestic legislation relating wholly or mainly to taxation.

## ARTICLE 8

### Settlement of Disputes between an Investor and a Host State

(1) Disputes between a national or company of one Contracting Party and the other Contracting Party concerning an obligation of the latter under this Agreement in relation to an investment of the former which have not been legally and amicably settled shall after a period of six months from written notification of a claim be submitted to international arbitration if either party to the dispute so wishes.

(2) Where the dispute is referred to international arbitration, the investor and the Contracting Party concerned in the dispute may agree to refer the dispute either to:

- (a) the International Centre for the Settlement of Investment Disputes (having regard to the provisions, where applicable, of the Convention on the Settlement of Investment Disputes between States and Nationals of other States, opened for signature at Washington DC on 18 March 1965[1] and the Additional Facility for the Administration of Conciliation, Arbitration and Fact-Finding Proceedings); or

---

[1] Treaty Series No. 25 (1967), Cmnd. 3255.

4

the Court of Arbitration of the International Chamber of Commerce; or

an international arbitrator or *ad hoc* arbitration tribunal to be appointed by a special agreement or established under the Arbitration Rules of the United Nations Commission on International Trade Law.

After a period of six months from written notification of the claim there is no agreement on alternative procedure, the parties to the dispute shall be bound to submit it to arbitration under the Arbitration Rules of the United Nations Commission on International Trade Law as then in force. The parties to the dispute may agree in writing to modify these Rules.

## ARTICLE 9

### Disputes between the Contracting Parties

(1) Disputes between the Contracting Parties concerning the interpretation or application of this Agreement should, if possible, be settled through the diplomatic channel.

(2) If a dispute between the Contracting Parties cannot thus be settled within a period of six months, it shall upon the request of either Contracting Party be submitted to an arbitral tribunal.

(3) Such an arbitral tribunal shall be constituted for each individual case in the following way. Within two months of the receipt of the request for arbitration, each Contracting Party shall appoint one member of the tribunal. These two members shall then select a national of a third State who on approval by the two Contracting Parties shall be appointed Chairman of the tribunal. The chairman shall be appointed within two months from the date of appointment of the other two members.

(4) If within the periods specified in paragraph (3) of this Article the necessary appointments have not been made, either Contracting Party may, in the absence of any other agreement, invite the President of the International Court of Justice to make any necessary appointments. If the President is a national of either Contracting Party or if he is otherwise prevented from discharging the said function, the Vice-President shall be invited to make the necessary appointments. If the Vice-President is a national of either Contracting Party or if he too is prevented from discharging the said function, the Member of the International Court of Justice next in seniority who is not a national of either Contracting Party shall be invited to make the necessary appointments.

(5) The arbitral tribunal shall reach its decision by a majority of votes. Such decision shall be binding on both Contracting Parties. Each Contracting Party shall bear the cost of its own member of the tribunal and of its representation in the arbitral proceedings; the cost of the Chairman and the remaining costs shall be borne in equal parts by the Contracting Parties. The tribunal may, however, in its decision direct that a higher proportion of costs shall be borne by one of the two Contracting Parties, and this award shall be binding on both Contracting Parties. The tribunal shall determine its own procedure.

## ARTICLE 10

### Subrogation

(1) If one Contracting Party or its designated Agency makes a payment under an indemnity given in respect of an investment on the territory of the other Contracting Party, the latter Contracting Party shall recognise the assignment to the former Contracting Party or its designated Agency by law or by legal transaction of all the rights and claims of the party indemnified and that the former Contracting Party or its designated Agency is entitled to exercise such rights and enforce such claims by virtue of subrogation, to the same extent as the party indemnified.

(2) The former Contracting Party or its designated Agency shall be entitled in circumstances to the same treatment in respect of the rights and claims acquired by virtue of the assignment and any payments received in pursuance of those rights and claims as the party indemnified was entitled to receive by virtue of this Agreement in respect of the investment concerned and its related returns.

(3) Any payments received by the former Contracting Party or its designated Agency in pursuance of the rights and claims acquired shall be freely available to the former Contracting Party for the purpose of meeting any expenditure incurred in the territory of the latter Contracting Party.

## ARTICLE 11

### Territorial Extension

At the time of signature of this Agreement, or at any time thereafter, the provisions of this Agreement may be extended to such territories for whose international relations the Government of the United Kingdom are responsible as may be agreed between the Contracting Parties in an Exchange of Notes.

## ARTICLE 12

### Entry into Force

Each Contracting Party shall notify the other in writing of the completion of the constitutional formalities required in its territory for the entry into force of this Agreement. This Agreement shall enter into force on the date of the latter of the two notifications¹.

## ARTICLE 13

### Duration and Termination

This Agreement shall remain in force for a period of ten years. Thereafter it shall continue in force until the expiration of twelve months from the date on which either Contracting Party shall have given written notice of termination to the other. Provided that in respect of investments made whilst the Agreement is in force, its provisions shall continue in effect with respect to such investments for a period of twenty years after the date of termination and without prejudice to the application thereafter of the rules of general international law.

In witness whereof the undersigned, duly authorised thereto by their respective Governments, have signed this Agreement.

Done in duplicate at La Paz this twenty fourth day of May 1988 in the English and Spanish languages, both texts being equally authoritative.

| For the Government of the United Kingdom of Great Britain and Northern Ireland: | For the Government of the Republic of Bolivia: |
|---|---|
| TIM EGGAR | BEDRIGAL |

---

¹The Agreement entered into force on 16 February 1990.

BOLIVIA NO. 25

I, David Arthur Cyril Hallett, Her Majesty's Consul at La Paz, do hereby certify that the document hereunto annexed is a true and complete copy of the Note dated 3 December 1992 from Her Majesty's Ambassador Mr Richard Michael Jackson to the Bolivian Minister of Foreign Affaires and Worship, Lic Ronald MacLean Abaroa, concerning the extension of the UK/Bolivia Investment Promotion and Protection Agreement (IPPA) to the Isle of Man, the Turks and Caicos Islands, Bermuda and the Baliwicks of Guernsey and Jersey.

In testimony whereof I have hereunto set my name and official seal this 21st day of January 1993, at the British Embassy at La Paz.

Hallett



1

3 December 1992

His Excellency
Ronald MacLean A
Minister of Foreign Affaires and Worship
La Paz

Your Excellency

I have the honour to refer to the Agreement between the Government of the United Kingdom of Great Britain and Northern Ireland and the Government of the Republic of Bolivia for the Promotion and Protection of Investments done at La Paz on 24 May 1988; and in accordance with the provisions of Article 11 thereof, to propose that the Agreement shall be extended to the Isle of Man, the Turks and Caicos Islands, Bermuda and the Baliwicks of Guernsey and Jersey.

If this proposal is acceptable to the Government of the Republic of Bolivia I have the honour to suggest that the present Note and Your Excellency's reply to that effect shall constitute an Agreement between the two Governments which shall enter into force on the day of your reply.

I avail myself of this opportunity to extend to Your Excellency the assurance of my highest consideration.

R M Jackson
Her Britannic Majesty's Ambassador

2

3 diciembre 1992

Excelentísimo señor
Lic Ronald MacLean A
Ministro de Relaciones
Exteriores y Culto
La Paz

Excelentísimo señor Ministro

Tengo el honor de referirme al Convenio entre el Gobierno del Reino Unido de Gran Bretaña e Irlanda del Norte y el Gobierno de la República de Bolivia para la Promoción y Protección de Inversiones realizado en La Paz el 24 de mayo de 1988; y de acuerdo con las provisiones del Artículo 11 del mismo, proponer que el Convenio se extienda a la Isla de Man, las Islas Turcos y Caicos, Bermuda y las Baliwicks de Guernsey y Jersey.

Si esta propuesta es aceptable para el Gobierno de la República de Bolivia, tengo el honor de sugerirle que la presente Nota y la respuesta de Su Excelencia a tal efecto, constituyan un Acuerdo entre ambos Gobiernos, el mismo que entrará en vigencia en la fecha de su respuesta.

Hago propicia esta oportunidad para renovar a Su Excelencia las seguridades de mi más alta consideración.

R M Jackson
Embajador de Su Majestad Británica

3

BOLIVIA NO 25





**REPUBLICA DE BOLIVIA**

**MINISTERIO DE RELACIONES EXTERIORES Y CULTO**

SBAPE-DGEA-2156/

La Paz, - 9 DIC. 1992

Your Excellency:

I have the honour to acknowledge receipt of Your Excellency's note dated 3 December 1992 concerning the Agreement between the Government of the Republic of Bolivia and the Government of the United Kingdom of Great Britain and Northern Ireland for the Promotion and Protection of Investments which reads as follows:

"I have the honour to refer to the Agreement between the Government of the United Kingdom of Great Britain and Northern Ireland and the Government of the Republic of Bolivia for the Promotion and Protection of Investments done at La Paz on 24 May 1988; and in accordance with the provisions of Article 11 thereof, to propose that the Agreement shall be extended to the Isle of Man, the Turks and Caicos Islands, Bermuda and the Balawicks of Guernsey and Jersey.

If this proposal is acceptable to the Government of the Republic of Bolivia I have the honour to suggest that the present Note and Your Excellency's reply to that effect shall constitute an Agreement between the two Governments which shall enter into force on the day of your reply".

I have the honour to confirm that your proposal is acceptable to the Government of the Republic of Bolivia and that Your Excellency's Note and this reply shall constitute an Agreement between the two Governments, which shall enter into force today.

I avail myself of this opportunity to renew to Your Excellency the assurance of my highest consideration.

Humberto Bolut-Atteda
Ministro de Relaciones Exteriores y Culto a.i.

HE Mr Richard Michael Jackson
Her Britannic Majesty's Ambassador
Present

4

BOLIVIA No.25

(3)



**REPUBLICA DE BOLIVIA**

**MINISTERIO DE RELACIONES EXTERIORES Y CULTO**

SBAPE-DGEA-2156/

La Paz, - 9 DIC. 1992

Excelentísimo señor Embajador:

Tengo el honor de acusar recibo de la nota de Su Excelencia fechada el 3 de diciembre de 1992, con relación al Convenio entre el Gobierno de la República de Bolivia y el Gobierno del Reino Unido de Gran Bretaña e Irlanda del Norte para la Promoción y Protección de Inversiones, cuyo texto es el siguiente:

"Tengo el honor de referirme al Convenio entre el Gobierno del Reino Unido de Gran Bretaña e Irlanda del Norte y el Gobierno de la República de Bolivia para la Promoción y Protección de Inversiones realizado en La Paz el 24 de mayo de 1988; y de acuerdo con las provisiones del Artículo 11 del mismo, proponer que el Convenio se extienda a la Isla de Man, las Islas Turcos y Caicos, Bermuda y las Baliwicks de Guernsey y Jersey.

Si esta propuesta es aceptable para el Gobierno de la República de Bolivia, tengo el honor de sugerirle que la presente Nota y la respuesta de Su Excelencia a tal efecto, constituyan un Acuerdo entre ambos Gobiernos, el mismo que entrará en vigencia en la fecha de su respuesta".

Tengo el honor de confirmar que la propuesta planteada en su Nota es aceptable para el Gobierno de la República de Bolivia y que por lo tanto la Nota de Su Excelencia y esta respuesta constituirán un Acuerdo entre ambos Gobiernos, el mismo que entrará en vigencia el día de hoy.

Hago propicia esta oportunidad para renovar a Su Excelencia las seguridades de mi más alta consideración.

Excmo. señor
D. Richard Michael Jackson
EMBAJADOR DE SU MAJESTAD BRITANICA
Presente

Humberto Bohrt Arteda
Ministro de Relaciones Exteriores y Culto a.i.

5