**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GLENCORE FINANCE (BERMUDA) LTD.**, <br><br> Petitioner, <br><br> v. <br><br> **PLURINATIONAL STATE OF BOLIVIA**, <br><br> Respondent. | Case No. 23-cv-3031 (CRC) |

**OPINION AND ORDER**

In 2023, Glencore Finance (Bermuda) Ltd. ("Glencore") petitioned this Court to recognize and enforce a foreign arbitral award that it obtained against the Plurinational State of Bolivia ("Bolivia"). Because Bolivia is a foreign state, Glencore had to effectuate service according to the Foreign Sovereign Immunities Act ("FSIA"). Following the FSIA's instructions, Glencore first prepared a Letter Rogatory to Bolivia pursuant to the Inter-American Convention on Letters Rogatory and Additional Protocol (together, the "IACAP"). After that method of service proved unsuccessful, the Court sent a copy of the service documents directly to Bolivia's Ministry of Foreign Affairs.

Bolivia now specially appears in this case and moves to dismiss the petition, claiming that service was improper because Glencore addressed the Letter Rogatory to the wrong Bolivian government entity. That is, Bolivia contends that Glencore—quite literally—failed a box-checking exercise. The Court disagrees. Because Glencore complied with the service requirements of both the IACAP and the FSIA, the Court denies Bolivia's motion to dismiss.

I.  **Background**

    A.  <u>Underlying Arbitration</u>

Prior to 2007, Glencore owned four mining assets in Bolivia: (1) the Vinto Tin Smelter; (2) the Antimony Smelter; (3) tin concentrates stored at the Antimony Smelter; and (4) the Colquiri Mine. First Am. Pet. to Recognize and Enforce a Foreign Arbitral Award ("First Am. Pet.") ¶¶ 2, 16. But between 2007 and 2012, Bolivia nationalized all of those holdings through a series of supreme decrees. <u>Id.</u> ¶¶ 17–19. Glencore did not receive payment for the assets, so it initiated arbitration against Bolivia pursuant to the Agreement between the Government of the United Kingdom of Great Britain and Northern Ireland and the Government of the Republic of Bolivia for the Promotion and Protection of Investments, May 24, 1988, 1640 U.N.T.S. 3, extended to the British overseas territory of Bermuda on December 9, 1992 (the "Treaty"). <u>Id.</u> ¶¶ 3, 23. The protracted arbitration proceeded before a three-member tribunal for seven years. <u>Id.</u> ¶¶ 25–31.

In September 2023, the tribunal concluded that Bolivia violated the Treaty by failing to compensate Glencore for its mining assets. <u>Id.</u> ¶ 31. Accordingly, the tribunal ordered Bolivia to pay Glencore more than $253 million, plus post-award interest. <u>Id.</u> ¶¶ 32–34. The following month, Glencore petitioned this Court to enforce the arbitral award. <u>See</u> Pet. to Recognize and Enforce a Foreign Arbitral Award ¶¶ 50–51. After the tribunal issued a corrected arbitration award clarifying the accrual of interest, Glencore filed an Amended Petition. <u>See</u> First Am. Pet. ¶¶ 36–37.

    B.  <u>Attempts to Effectuate Service on Bolivia</u>

After filing the Amended Petition, Glencore attempted to serve Bolivia according to the FSIA's requirements for service upon a foreign state. <u>See</u> 28 U.S.C. § 1608(a). Glencore first

tried to effectuate service pursuant to the IACAP, which is the relevant "international convention on service of judicial documents." Id. § 1608(a)(2). To comply with the IACAP, Glencore moved this Court to issue a Letter Rogatory.[1] See Mot. for Issuance of a Letter Rogatory (ECF No. 18). The Court granted the motion in December 2023. See Order (ECF No. 19); Letter Rogatory (ECF No. 20).

After the Court issued the Letter Rogatory, Glencore sent the letter and service documents to ABC Legal Services ("ABC Legal"), a contractor designated by the United States Central Authority to effectuate service of letters rogatory under the IACAP. See Declaration of Thomas W. Walsh (ECF No. 39-1) ("Walsh Decl.") ¶ 10. ABC Legal then sent the documents via DHL to Bolivia's Ministry of Foreign Affairs. See id. ¶¶ 11–12; id., Ex. F (DHL Shipment Receipt); id., Ex. G (Proof of Delivery). In the following months, Glencore sent a series of letters to the Ministry's General Director of Legal Affairs to confirm receipt of the service documents; it did not receive a response.[2] See Walsh Decl. ¶¶ 13–16.

Unbeknownst to Glencore or the Court, the Ministry of Foreign Affairs forwarded the Letter Rogatory to Bolivia's Supreme Court of Justice in June 2024. See Declaration of John M. Conlon (ECF No. 36-2) ("Conlon Decl."), Ex. A. On July 10, 2024, the Supreme Court of Justice issued an "Official Letter" addressing the Letter Rogatory. In the Official Letter, the Supreme Court of Justice explained that the Letter Rogatory listed the Ministry of Foreign Affairs as both the "Responding Authority" (i.e., the entity responsible for effectuating service

---

[1] A letter rogatory is "a formal request from a court in which an action is pending[] to a foreign court to perform some judicial act," including "the serving of a summons." 22 C.F.R. § 92.54.

[2] The person Glencore attempted to contact had not worked at the Ministry of Foreign Affairs since August 2022. See Declaration of John M. Conlon (ECF No. 36-2), Ex. C.

3

under the IACAP) and the "recipient for the notification" (i.e., the entity being served on behalf of Bolivia). Id. at 1 (translation). The court also acknowledged the Ministry of Foreign Affairs' assertion that it was not responsible for "ensuring and defending the interests of the State." Id. at 2–3 (translation). Accordingly, the Supreme Court of Justice concluded that the service documents should be returned to this Court "for the purpose of specifying the recipient for the notification, considering the background and Bolivian legislation that applies in this case (especially art. 4 of Law No. 465 that limits the jurisdictions of the [Ministry of Foreign Affairs])." Id. at 3 (translation). In a July 18, 2024 letter, Bolivian authorities attempted to forward the Official Letter to "the competent authorities of the United States of America." Conlon Decl., Ex. B (translation). Neither Glencore nor the Court received the Official Letter. See Walsh Decl. ¶ 16.

Over a year after ABC Legal sent the Letter Rogatory, Glencore moved on to the FSIA's next method of service: mailing a copy of the service documents directly to the Ministry of Foreign Affairs. See Notice & Request (ECF No. 27); 28 U.S.C. § 1608(a)(3). In April 2025, the Clerk of the Court dispatched a copy of the service documents via FedEx delivery. See Certificate of Clerk (ECF No. 31). The Ministry of Foreign Affairs received the documents on May 6, 2025. See Proof of Service (ECF No. 32).

Bolivia now appears for the special and limited purpose of moving to dismiss Glencore's Amended Petition.[3] It asserts that Glencore failed to properly effectuate service under the IACAP and FSIA, so the Court lacks personal jurisdiction over Bolivia. In response, Glencore maintains that service was proper, and because Bolivia failed to address the merits of the

---

[3] In the alternative, Bolivia asks the Court to quash Glencore's previous attempts to effectuate service on Bolivia.

4

Amended Petition, the Court should recognize and enforce the corrected arbitration award. The motion to dismiss is fully briefed.

## II. Legal Standards

Bolivia moves to dismiss the Amended Petition for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), and for insufficient service of process, Fed. R. Civ. P. 12(b)(5). But as described below, Bolivia's "only ground for contesting personal jurisdiction under Rule 12(b)(2) is insufficient service of process" under Rule 12(b)(5), so "the Rule 12 analysis merges." Koch Mins. Sàrl v. Bolivarian Republic of Venezuela, 514 F. Supp. 3d 20, 30–31 (D.D.C. 2020). It is the plaintiff's burden to show that it effectuated proper service. Jouanny v. Embassy of Fr. in the U.S., 220 F. Supp. 3d 34, 37 (D.D.C. 2016). Specifically, it must "demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 [which governs summonses] and any other applicable provision of law." Id. at 38 (alteration in original) (quoting Light v. Wolf, 816 F.2d 746, 751 (D.C. Cir. 1987)). If the plaintiff fails to satisfy its burden, then the Court "lacks personal jurisdiction to act with respect to th[e] defendant at all." Cambridge Holdings Grp., Inc. v. Fed. Ins. Co., 489 F.3d 1356, 1361 (D.C. Cir. 2007); Mann v. Castiel, 681 F.3d 368, 372 (D.C. Cir. 2012) ("Service is . . . not only a means of 'notifying a defendant of the commencement of an action against him,' but 'a ritual that marks the court's assertion of jurisdiction over the lawsuit.'" (citation omitted)).

## III. Analysis

Bolivia's motion to dismiss hinges on whether Glencore properly effectuated service under 28 U.S.C. § 1608(a)(2). The motion comes down to whether the Letter Rogatory was addressed to the correct Bolivian government entity. Bolivia claims that service was improper because Glencore improperly addressed the Letter Rogatory to the "Director of Legal Affairs

5

rather than the Ministry of Foreign Affairs." Specially Appearing Resp.'s Mem. of P.& A. in Supp. of its Mot. to Dismiss ("Mot. to Dismiss") at 7. Glencore retorts that it addressed the package to the Ministry of Foreign Affairs with attention to the General Director of Legal Affairs "because that was the exact recipient and address that Bolivia specified for the receipt of letters rogatory under the IACAP." Pet.'s Mem. of P. & A. in Opp'n to Resp.'s Mot. to Dismiss ("Opp'n") at 11. Glencore's argument carries the day.

   A.  Service of Process Under the FSIA

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in federal court." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 439 (1989); see also Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 610–11 (1992). That is, a case against a foreign state may only proceed if the FSIA provides both subject matter jurisdiction over the case and personal jurisdiction over the foreign state. See Azadeh v. Gov't of Islamic Republic of Iran, 318 F. Supp. 3d 90, 97 (D.D.C. 2018). Here, only personal jurisdiction is in dispute.

The Court may exercise personal jurisdiction over a foreign state if (1) the Court has subject matter jurisdiction, and (2) the state was properly served.[4] See Prac. Concepts, Inc. v. Republic of Bolivia, 811 F.2d 1543, 1548 n.11 (D.C. Cir. 1987) ("[U]nder the FSIA, 'subject matter jurisdiction plus service of process equals personal jurisdiction'" (citation omitted)); 28 U.S.C. § 1330(b). Federal Rule of Civil Procedure 4 lays out the requirements for proper service of process. See Koch, 514 F. Supp. 3d at 31. Under Rule 4, a foreign state "must be served in accordance with" the FSIA. Fed. R. Civ. P. 4(j)(1); see Hardy Expl. & Prod. (India), Inc. v.

---

[4] Because Bolivia is a foreign state, the Court need not examine whether it "has the minimum contacts that would otherwise be a prerequisite for personal jurisdiction under the Due Process Clause of the Fifth Amendment." I.T. Consultants, Inc. v. Republic of Pakistan, 351 F.3d 1184, 1191 (D.C. Cir. 2003) (noting that foreign states are not "persons" protected by the Fifth Amendment).

Gov't of India, 219 F. Supp. 3d 50, 57 (D.D.C. 2016).  In other words, the Court has personal jurisdiction over Bolivia if it was properly served under the FSIA.  See Republic of Sudan v. Harrison, 587 U.S. 1, 4 (2019).

> The FSIA provides four methods of effectuating service on a foreign state:
>
> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit . . . by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
>
> (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit . . . by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State . . . and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a).

A plaintiff "must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on."  Ben-Rafael v. Islamic Republic of Iran, 540 F. Supp. 2d 39, 52 (D.D.C. 2008); see also Barot v. Embassy of the Republic of Zambia, 785 F.3d 26, 27 (D.C. Cir. 2015) (recognizing that the FSIA provides "four methods of service in descending order of preference").  A plaintiff must also strictly adhere to the terms of § 1608(a), as "[l]eniency . . . would disorder the statutory scheme."  Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148, 154 (D.C. Cir. 1994).  Neither a plaintiff's "substantial compliance" with

§ 1608(a) nor a foreign state's "actual notice" of the litigation are sufficient.  Barot, 785 F.3d at 27; see Azadeh, 318 F. Supp. 3d at 98.

### B. Service of Letters Rogatory Under the IACAP

The IACAP is an "international convention on service of judicial documents" under § 1608(a)(2).  See Redes Andinas de Comunicaciones S.R.L. v. Republic of Peru, No. 22-cv-3631 (RC), 2024 WL 4286107, at *5 (D.D.C. Sept. 24, 2024).  The convention governs the use of letters rogatory "issued in conjunction with proceedings in civil and commercial matters" that "have as their purpose . . . [t]he performance of procedural acts of a merely formal nature, such as service of process[.]"  Walsh Decl., Ex. A at 2.  Both Bolivia and the United States are parties to the IACAP.  See id., Ex. B at 2; id., Ex. C at 2.

Each state party to the IACAP designates a "central authority" authorized to send and receive letters rogatory from another state party.  Id., Ex. A at 7–8.  A letter rogatory must enclose the complaint, relevant supporting documentation, and three standardized forms provided by the IACAP.  See id. at 11–12 (Form A), 12–14 (Form B), 14–16 (Form C).  When a state party's central authority receives a letter rogatory from another state party, it must "transmit the letter rogatory to the appropriate judicial or administrative authority for processing in accordance with the applicable local law."  Id. at 8.  The destination state's central authority must then "certify execution of the letter rogatory" to the origin state's central authority.  Id. at 8, 14–16 (Form C).

The United States has authorized ABC Legal to deliver letters rogatory on behalf of its central authority.  See Walsh Decl. ¶ 10; id., Ex. B. at 6.  In February 2021, Bolivia submitted the following designation of its central authority:



Id., Ex. D (translation). There is no evidence that Bolivia has since changed its designation.

C. Glencore's Service on Bolivia

After Glencore filed its Amended Petition, it sought to effectuate service pursuant to the four methods provided by § 1608(a). The first method of service was not possible because there was no "special arrangement for service" between Glencore and Bolivia. 28 U.S.C. § 1608(a)(1); Mot. to Dismiss at 7; Opp'n at 4. So Glencore attempted the second method of service by delivering a copy of the summons and petition "in accordance with" the IACAP. 28 U.S.C. § 1608(a)(2). Glencore prepared a letter rogatory for the Court to sign and issue. See Mot. for Issuance of a Letter Rogatory. On Form A, which accompanied the Letter Rogatory, Glencore provided the name and address for the Bolivian central authority:



Letter Rogatory at 1.[5]  After the Court issued the Letter Rogatory, Glencore sent the letter and accompanying documents to ABC Legal.  See Walsh Decl. ¶ 10.  ABC Legal then sent the service package to Bolivia's central authority via DHL:



See id. ¶¶ 11–12; id., Ex. F.  The Ministry of Foreign Affairs accepted the package.  Id., Ex. G.

Bolivia's motion to dismiss rests entirely on its assertion that Glencore "failed to properly address" the Bolivian central authority by sending the letter rogatory to the Director of Legal Affairs rather than the Ministry of Foreign Affairs.  Mot. to Dismiss at 7.  In its first brief, Bolivia faults the label on the DHL package.  See id. at 9 (citing Glencore's "failure to properly address the DHL package containing the Letter Rogatory" as the "*sole* reason" why service was improper under the IACAP (emphasis added)).  In its reply brief, Bolivia changes course and faults the address provided in Box 4 of Form A.  See Specially-Appearing Resp.'s Reply Mem. in Supp. of Mot. to Dismiss ("Reply Br.") at 1 (noting that Glencore's defense of the DHL label "ignores the dispositive fact that the Letters Rogatory themselves . . . were improperly addressed"); id. at 2 ("While Glencore did include the address for the Ministry of Foreign Affairs

---

[5] The listed "Name" translates to "General Director of Legal Affairs."  The listed "Address" translates to "Ministry of Foreign Affairs, General Directorate of Legal Affairs, Plaza Murillo, Junin Street Corner Ingavi, La Paz, Plurinational State of Bolivia."  See Walsh Decl., Ex. D.

in the space that followed for the address of the Director of Legal Affairs, the designation of the Central Authority was improper.").

Both arguments falter. Bolivia designated its central authority's "Body/National Entity" as the Ministry of Foreign Affairs and the specific "Department/Office" as the General Directorate of Legal Affairs. See Walsh Decl., Ex. D (translation). As Bolivia's own Supreme Court of Justice acknowledges, the latter entity is part of the former entity. See Conlon Decl., Ex. A at 1 (translation) (holding that "the Director General of Legal Affairs *of the* Ministry of Foreign Affairs of the Plurinational State of Bolivia is . . . the Responding Authority" (emphasis added)). Form A and the DHL package list both entities and provide the correct address in its entirety. In short, Glencore followed Bolivia's specific instructions for addressing letters rogatory, and nothing more was required under the IACAP.

D.  The Supreme Court of Justice Letter

Bolivia submits that the Supreme Court of Justice's Official Letter informed Glencore that the Letter Rogatory "did not satisfy service requirements under the IACAP." Mot. to Dismiss at 7 (footnote omitted). Because Glencore "did not advise this Court" of the Official Letter or otherwise "take[] any steps to resolve the deficiency identified by the Supreme Court [of Justice]," Bolivia contends that service was improper under the FSIA. Id. at 8.

This argument fails for at least two reasons. First, the Supreme Court of Justice's Official Letter asked this Court to clarify the *recipient* of the service, not the *central authority* responsible for effectuating service. The Official Letter noted that the Letter Rogatory identified the Ministry of Foreign Affairs as both "the Responding Central Authority" and "the recipient of the notification (according to Form A)." Conlon Decl., Ex. A at 2 (translation); see Letter Rogatory at 1 (Form A listing the Ministry of Foreign Affairs as the "central authority of the

11

state of destination"); id. at 2 (Form A requesting prompt service on Bolivia at the Ministry of Foreign Affairs' address).  The court then acknowledged that under the IACAP, letters rogatory "shall be *executed* in accordance with the laws and procedural rules of the State of destination." Conlon Decl., Ex. A at 2 (translation) (emphasis added).  The Ministry of Foreign Affairs opined that its "prerogatives and jurisdictions . . . do not include that of ensuring and defending the interests of the State," and it suggested this Court should "specif[y] the *recipient*."  Id. at 2–3 (translation) (emphasis added).  The Supreme Court of Justice agreed to return the Letter Rogatory to this Court "for the purpose of specifying the *recipient* for the notification, considering the background and Bolivian legislation that applies in this case (especially art. 4 of Law No. 465 that limits the jurisdictions of the [Ministry of Foreign Affairs])."[6]  Id. at 3 (translation) (emphasis added).  In short, the Supreme Court of Justice sought clarification on which government entity would accept service on behalf of Bolivia, not which entity served as Bolivia's central authority under the IACAP.[7]

Second, there is no evidence that the Supreme Court of Justice "advised" Glencore of its conclusions.  As noted above, the Bolivian government attempted to forward the Supreme Court of Justice's Official Letter to the "competent authorities of the United States" on July 18, 2024.  See Conlon Decl., Ex. B (translation).  But there is some confusion as to who sent and received

---

[6] Article 4 of Bolivia Law No. 465 enumerates the powers of the Ministry of Foreign Affairs.

[7] In its motion to dismiss, Bolivia does not argue that the Ministry of Foreign Affairs could not accept service on behalf of Bolivia; it only argued that Glencore misaddressed its central authority.  See Mot. to Dismiss at 9 (citing the DHL package's label as the "sole reason" why Glencore failed to satisfy the IACAP); Reply Br. at 2 (asserting that Glencore's "designation of the Central Authority was improper").  Accordingly, Bolivia has waived any argument that the ultimate *recipient* of the service was improper.  See Gilmore v. Palestinian Interim Self-Gov't Auth., 8 F. Supp. 3d 9, 12–13 (D.D.C. 2014), aff'd, 843 F.3d 958 (D.C. Cir. 2016).

12

the July 18 letter. Bolivia submits that the Bolivian Ambassador to the United States sent the letter to ABC Legal. See Mot. to Dismiss at 4. Glencore seemingly agrees. See Opp'n at 15 n.5; Walsh Decl. ¶ 16. But the record suggests otherwise. On July 10, the Supreme Court of Justice ordered that an "official letter" be sent to this Court "*through* the Bolivian Central Authority" (i.e., the Ministry of Foreign Affairs). Conlon Decl., Ex. A at 3 (translation) (emphasis added). In turn, the July 18 letter was written on the Ministry of Foreign Affairs' letterhead and signed by the Ministry's General Director of Legal Affairs. See Conlon Decl., Ex. B (original). There is also no evidence that the July 18 letter—which was written in Spanish— was addressed specifically to ABC Legal. Thus, it appears more likely that the July 18 letter was sent *from* the Ministry of Foreign Affairs *to* the Bolivian Ambassador. Without any evidence that Glencore or ABC Legal received the July 18 letter, the Court cannot conclude that Glencore was "on notice" of any purported deficiencies in the Letter Rogatory.[8]

\* \* \*

By properly addressing the Letter Rogatory to Bolivia's central authority, Glencore effectuated service "in accordance with" the IACAP. 28 U.S.C. § 1608(a)(2). Bolivia failed to certify execution of the Letter Rogatory, see Walsh Decl. ¶ 16; id., Ex. A at 8, so Glencore was permitted to attempt the next available method of service under § 1608(a), see Trapote v. Bolivarian Republic of Venezuela, 729 F. Supp. 3d 34, 36 (D.D.C. 2024) (concluding that plaintiffs "fulfilled their obligation to attempt the second method under [the] FSIA" when they complied with the applicable international convention and the foreign state failed to fulfill its reciprocal obligations). Glencore did just that, and Bolivia's Ministry of Foreign Affairs

---

[8] The Court need not address whether Glencore would have been on "constructive notice" of the Supreme Court of Justice's Official Letter if ABC Legal had received the July 18 letter. See Mot. to Dismiss at 8; Opp'n at 15 n.5.

received a copy of the service documents pursuant to § 1608(a)(3).  See Certificate of Clerk (ECF No. 31); Walsh Decl., Ex. K (FedEx Proof of Delivery).  Because Bolivia was properly served under the FSIA, this Court may exercise personal jurisdiction over it.[9]

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Respondent's Motion to Dismiss (ECF No. 36) is DENIED.  It is further

**ORDERED** that the parties shall submit a Joint Status Report within 30 days of this Order setting forth a proposed briefing schedule for Bolivia's opposition on the merits of the Amended Petition.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: January 9, 2026

---

[9] The Court declines Glencore's invitation to "recognize and enforce the Corrected Award in its entirety" without further briefing. Opp'n at 17–18; cf. Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria, 962 F.3d 576, 586 (D.C. Cir. 2020) (noting that district courts "must resolve colorable assertions of immunity before the foreign sovereign may be required to address the merits at all"); Prac. Concepts, 811 F.2d at 1551 n.19 ("Intolerant adherence to default judgments against foreign states could adversely affect this nation's relations with other nations and 'undermine the State Department's continuing efforts to encourage . . . foreign sovereigns generally[ ] to resolve disputes within the United States' legal framework.'" (alterations in original) (citation omitted)).